**STATE of Missouri, Respondent,**

v.

**Derrick McFARLAND, Appellant.**

**No. 28375.**

Missouri Court of Appeals,
Southern District.

Aug. 14, 2008.

Ellen H. Flottman, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., and Karen L. Kramer, Jefferson City, for respondent.

DANIEL E. SCOTT, Presiding Judge.

Defendant Derrick McFarland appeals his first-degree murder and armed criminal action convictions. He does not challenge the sufficiency of the evidence. We view all facts and reasonable inferences in favor of the verdicts. *State v. Woodmansee,* 203 S.W.3d 287, 289 (Mo.App.2006).

## Facts and Background

Following an altercation, Defendant expressed several threats to "get" and even "kill" 17–year–old Lawrence "Chubby" Warren. Defendant told Antwon Weakly that he was going to take Travis Henderson to get Warren, and about a week later, he showed Weakly a silver 380 caliber handgun.

The day after Christmas, Defendant asked Elgin Anders for some .38 or 380 caliber shells. When Anders said he would have to find them, Defendant decided to drive Anders to Wal–Mart instead. Already in Defendant's car were Weakly and Henderson, whom Anders did not know. Anders never saw Henderson's face because when Anders got in, Henderson pulled his hood up around his head. Since it was not cold, Anders felt Henderson was trying to hide his face.

They drove to Wal–Mart. Using Defendant's money and at his request, Anders entered the store, bought 100 rounds of ammunition, returned to the car, and gave it to Defendant. The ammunition was passed to Henderson, who loaded a silver handgun, pocketed additional shells, and gave the rest back to Weakly.

The men took Anders home. Warren, whose mother dated Anders, was there. He and Defendant agreed to meet in 10–20 minutes at another house. Defendant and Henderson took Weakly to Defendant's brother's house and went to meet Warren. En route, Defendant offered Henderson $2500 and some crack cocaine to shoot Warren. Henderson said he would rather just beat Warren up, which did not satisfy Defendant, who said Warren was "a problem" and "I need to just get him out [of] the way." After smoking more of Defendant's dope, Henderson agreed. Defendant said he would park one street over; Henderson should hide behind a house; and when Warren arrived, "just shoot him, kill him."

Henderson did as he was told. Warren drove up, parked, and got out. Henderson surprised him from behind. Begging Henderson not to shoot, Warren tried to run, but Henderson fatally shot him in the chest and head. Defendant, who had watched from a distance to be sure Henderson did it, came running up the street. Together they fled, and after picking Weakly back up, drove to Sikeston.

With Anders' help, the police found and arrested Defendant and located the weapon. Henderson, who admitted shooting Warren, testified at Defendant's trial pursuant to a plea bargain. The jury deliberated 42 minutes in convicting Defendant, who did not testify or offer evidence in his own defense. His appeal raises two points.

## Point I—Instructional Error

■■■ The parties agree that the verdict director for first-degree murder did not comply with MAI–CR3d 304.04, in that the element of deliberation was not personally ascribed to Defendant. *See State v. Davis,* 210 S.W.3d 229, 239 (Mo.App. 2006); MAI–CR3d 304.04, Note on Use 7(b). Defendant concedes this error was not preserved for appeal and any review must be for plain error. Yet instructional error seldom is plain error. *State v. Busch,* 920 S.W.2d 565, 569 (Mo.App.1996).

Defendant must demonstrate more than mere prejudice. "In the context of instructional error, plain error results when the trial court has so misdirected or failed to instruct the jury that it is apparent to the appellate court that the instructional error affected the jury's verdict." *Id.* (quoting *State v. Nolan*, 872 S.W.2d 99, 103 (Mo. banc 1994)).[1]

█ A verdict director omitting an essential element that was seriously disputed rises to the level of plain error. *State v. Cooper*, 215 S.W.3d 123, 126 (Mo. banc 2007). "On the other hand, if the evidence establishing the omitted element was not in dispute, the jury's verdict would not have been affected and no plain error relief need be given." *Id.* (citing *Nolan*, 872 S.W.2d at 103 and *Busch*, 920 S.W.2d at 569–70). Defendant acknowledges the latter-quoted rule, yet he does not contend that deliberation was "in dispute." To the contrary, defense counsel argued in closing that the case was "not about [whether Warren] was killed, *or whether it was cool reflection if he was killed*, it was whether there was an agreement" between Defendant and Henderson (our emphasis). Defendant did not contest the element of deliberation, or "cool reflection" as it is defined by statute and instruction.[2] Rather, he denied that he participated in the crime at all.

Our courts have found no prejudice or manifest injustice from instructional error unrelated to the disputed matters at trial.[3]

Indeed, *Busch* mirrors this case—the same offense; the same instructional error; but no plain error since "Defendant did not dispute the issue of deliberation, rather, he implied he did not participate in the murder at all." 920 S.W.2d at 570. *See also Davis*, 210 S.W.3d at 237–40 (same offense; same instructional error; same reasoning and result). Defendant has not carried his burden to show plain error. Point I fails.

## Point II—Hearsay

█ Defendant also charges error in allowing Weakly and Marco Dubose to testify about certain hearsay statements by Henderson which Defendant claims "did not fall within the co-conspirator exception" and improperly bolstered Henderson's testimony. We decline to consider the bolstering complaint since Defendant did not assert it below and has not requested plain error review.[4]

█ The parties agree our review is for abuse of discretion; thus, we should not reverse unless the challenged ruling was so "clearly against the logic of the circumstances before the court and ... so unreasonable as to indicate a lack of careful consideration." *State v. Yung*, 246 S.W.3d 547, 555 (Mo.App.2008). Further, a conviction will not be reversed for improper admission of hearsay that was not prejudicial to the accused. *State v. Cobb*, 820 S.W.2d 704, 711 (Mo.App.1991). Thus, Defendant must show both error and result-

---

1. *Nolan* was overruled in part on other grounds by *Deck v. State*, 68 S.W.3d 418, 427 (Mo. banc 2002).

2. *See* RSMo § 565.002(3) and MAI–CR 3d 313.02.

3. *See, e.g., State v. Wurtzberger*, 40 S.W.3d 893, 898 (Mo. banc 2001); *State v. Wright*, 30 S.W.3d 906, 912 (Mo.App.2000); *State v. Bradshaw*, 26 S.W.3d 461, 473 (Mo.App. 2000).

4. Defendant also suggests a Confrontation Clause violation, but waives that claim by failing to pursue or develop it in the brief's argument portion. *See State v. McDaniel*, 236 S.W.3d 127, 137 (Mo.App.2007). Moreover, Defendant's opportunity to cross-examine Henderson at trial satisfied his right to confrontation. *See State v. Blankenship*, 830 S.W.2d 1, 12 (Mo. banc 1992); *State v. Howell*, 226 S.W.3d 892, 896 (Mo.App.2007).

ing prejudice before reversal is warranted. *Id.*

 Weakly testified that, on their drive back to Sikeston, Henderson said he had shot someone. Defendant claims the co-conspirator exception did not authorize this hearsay statement since the crime already was completed. This court rejected a similar argument in *Coday v. State*, 179 S.W.3d 343 (Mo.App.2005):

> Statements of one conspirator are admissible against another under the co-conspirator exception to the hearsay rule, even when the conspirators are not charged with conspiracy. Coday argues that this hearsay exception does not apply because Victim's murder had already been committed when the conversation between Greathouse and Coday occurred. If a conspiracy continues for any purpose, however, statements made after the commission of the crime are still admissible pursuant to this exception to the hearsay rule.

*Id.* at 357 (internal citations omitted). Henderson agreed to shoot Warren in exchange for money and drugs. At the time of his statement, he had not yet been "paid" for his part in the crime. Thus, the conspiracy was not concluded.

 Moreover, even erroneously admitted evidence is not prejudicial if similar evidence was properly admitted or came into the case without objection. *State v. Collis*, 139 S.W.3d 638, 641 (Mo.App.2004); *State v. Evans*, 992 S.W.2d 275, 292 (Mo. App.1999). Everyone agreed that Henderson shot Warren. Henderson so testified without objection or contradiction. Defendant has not shown this challenged testimony, which named neither Defendant nor the victim, to be other than cumulative evidence of an uncontested fact.

The same can be said for Dubose's testimony, admitted over Defendant's objection, that Henderson told Dubose that he "walked up on the car, he shot off in the car, and the guy made a noise, and he shot him, and he ran off."[5] This does not mention Defendant either, and merely corroborates Henderson's unchallenged testimony on matters undisputed at trial. " '[I]n such a situation there is no prejudice and no reversible error.' " *Evans*, 992 S.W.2d 275, 292, (quoting *State v. Martinelli*, 972 S.W.2d 424, 436 (Mo.App.1998)). Thus, we deny Point II as well, and affirm the judgment and convictions.

BARNEY and BATES, JJ., concur.

---

5.  Defendant's brief cites other Dubose testimony as well, but Defendant did not object thereto at trial or request plain error review thereof on appeal.